24 P.3d 1274

Cresencio S. SAUCEDO, as personal representative of the Estate of Exiquio S. SINALOA, and on behalf of the statutory beneficiaries, including Armando S. Saucedo, Julia Saucedo, Leopoldo Saucedo, and Alberto Silva, Plaintiffs–Appellees,

v.

The SALVATION ARMY, an Arizona corporation; Edward Stettinius Stuart and Jane Doe Stuart, husband and wife, Defendants–Appellants.

No. 1 CA–CV 00–0272.

Court of Appeals of Arizona, Division 1, Department D.

May 24, 2001.

Burch & Cracchiolo, P.A. by Brian Kaven and Daryl Manhart, Phoenix, Attorneys for Defendants–Appellants.

Timbanard Kamper Borrelli, L.L.P. by Timothy J. Kamper and Roger W. Miller, Esq., Phoenix, Attorneys for Plaintiffs–Appellees.

## OPINION

GARBARINO, Judge.

¶ 1 The Salvation Army and Edward Stuart appeal from the trial court's denial of their motion for judgment as a matter of law on the issue of punitive damages, its denial of their motion for a new trial on all issues, its grant of a partial new trial only as to the amount of punitive damages, and its entry of judgment on a jury verdict in favor of the plaintiffs. For the reasons that follow, we affirm in part, vacate in part, and remand with directions.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Exiquio Sinaloa was struck and killed at 9:25 p.m. on March 26, 1996, while jaywalking across Broadway Road near 16th Street in Phoenix. Mr. Sinaloa was struck by a Salvation Army van, driven by its employee, Edward Stuart, who at the time was driving on a suspended license. At the time of his death, Mr. Sinaloa was wearing a dark jacket and gray pants, and had a blood alcohol content of 0.22. Mr. Stuart claims that he thought he had merely struck a black garbage bag containing aluminum cans, considering he was passing in front of a recycling plant. Mr. Stuart did not stop at the scene of the accident.

¶ 3 Mr. Stuart was being closely followed by two undercover Phoenix police officers when the accident occurred. The officers realized that Mr. Stuart had struck a person and, while one of the officers tended to Mr. Sinaloa, the other pursued Mr. Stuart to the Salvation Army facility approximately two blocks from the scene of the accident. Mr. Sinaloa either died on impact or within an extremely short time thereafter.[1]

¶ 4 The personal representative of Mr. Sinaloa's estate, Cresencio Saucedo, filed suit

1. The evidence places the time of the accident at 9:25 p.m. and Mr. Sinaloa was pronounced dead at 9:29 p.m. It appears that during the intervening four minutes, the officer had to get out of his car, walk to Mr. Sinaloa, and determine that he was dead.

against Mr. Stuart and the Salvation Army on behalf of the estate and various statutory beneficiaries, alleging that the defendants were negligent, and further alleging that the defendants' "conduct was willful, wanton, malicious, and grossly negligent." The plaintiffs demanded compensatory and punitive damages. The defendants moved for summary judgment on the plaintiffs' punitive damages claim, which the trial court denied. The case proceeded to a jury trial. At the close of the plaintiffs' case, the defendants moved for judgment as a matter of law[2] on the plaintiffs' claim for punitive damages. The trial court denied the motion, stating that

> [t]his is obviously not the strongest case for punitive damages, but there's evidence from which a reasonable jury could infer that the Defendant Stuart acted with a reckless mental state required to establish punitive damages. As I indicated to the parties before, this is the sort of controversy that we leave to resolve by juries.

The jury returned a verdict in favor of the plaintiffs, awarding $10,817.72 in compensatory damages and $1.00 in punitive damages. The jury found Mr. Sinaloa and the defendants each fifty percent at fault.

¶ 5 The plaintiffs filed a motion requesting a new trial as to the amount of punitive damages, claiming that the alleged misconduct of defense counsel invoked the passions and prejudices of the jury, rendering the punitive damages award insufficient. The trial court granted the plaintiffs' motion.

¶ 6 The defendants then moved for a new trial on all issues or, in the alternative, renewed their motion for judgment as a matter of law, arguing, among other things, that the issue of punitive damages should not have been submitted to the jury. Prior to the court's ruling on the defendants' motions, the defendants requested that the court reconsider its prior ruling granting a new trial only on the issue of punitive damages. The court then entered judgment in favor of the plaintiffs on the compensatory award including costs, denied the defendants' motion for reconsideration, and reaffirmed its prior or-

der setting aside the jury verdict as to punitive damages only and ordered a new trial for a determination of the amount of punitive damages. The court subsequently denied the defendants' motion for judgment as a matter of law on the punitive damages issue and their motion for new trial on all issues. The defendants filed a timely notice of appeal, *see* Ariz. R. Civ.App. P. 9(b)(4), and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–2101(B) and (F)(1) (1994).

## ISSUES

¶ 7 The defendants raise the following issues on appeal:

1. Whether the trial court erred by denying the defendants' motion for judgment as a matter of law on the plaintiffs' punitive damages claim;

2. Whether the trial court erred by granting the plaintiffs a new trial solely to determine and award punitive damages; and

3. In the alternative, if the trial court did not err by ordering a new trial, whether the trial court erred by limiting the issues to be re-tried solely to the amount of punitive damages, rather than granting a new trial as to all issues.

¶ 8 Because we conclude that the trial court erred by allowing the jury to consider the plaintiffs' punitive damages claim, we need not reach the additional issues raised by the defendants on appeal.

## STANDARD OF REVIEW

██ ¶ 9 Viewing the evidence in the light most favorable to the nonmoving party, we review the trial court's denial of a motion for judgment as a matter of law de novo. *Monaco*, 196 Ariz. at 302, ¶ 6, 995 P.2d at 738. A party is entitled to judgment as a matter of law "only when the facts presented in support of a claim have so little probative

---

2. The defendants moved for a directed verdict, which is now known as a motion for judgment as a matter of law. Ariz. R. Civ. P. 50; *Monaco v.*

*HealthPartners of S. Ariz.*, 196 Ariz. 299, 301, ¶ 3, 995 P.2d 735, 737 (App.1999).

**182**

value that reasonable people could not find for the claimant." *Id.*

## DISCUSSION

*The Trial Court's Denial of the Defendants' Motion for Judgment as a Matter of Law*

■ ¶ 10 In Arizona, to recover punitive damages, a plaintiff must prove by clear and convincing evidence that a "defendant's wrongful conduct was guided by evil motives or wilful or wanton disregard of the interests of others." *Piper v. Bear Med. Sys., Inc.,* 180 Ariz. 170, 180, 883 P.2d 407, 417 (App. 1993); *see also Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn,* 184 Ariz. 120, 132, 907 P.2d 506, 518 (App.1995). Punitive damages serve to punish wrongdoers and deter others from engaging in similar conduct. *Jacobson v. Superior Court,* 154 Ariz. 430, 431, 743 P.2d 410, 411 (App.1987).

■ ¶ 11 To recover punitive damages, a plaintiff must prove something more than the underlying tort. *Piper,* 180 Ariz. at 180, 883 P.2d at 417. That is, "a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an 'evil mind.'" *Hyatt Regency,* 184 Ariz. at 132, 907 P.2d at 518 (citing *Thompson v. Better–Bilt Aluminum Prods. Co.,* 171 Ariz. 550, 556–57, 832 P.2d 203, 209–10 (1992), *Rawlings v. Apodaca,* 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986), and *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 331–32, 723 P.2d 675, 680–81 (1986)). Although the element of a tortfeasor's intent may be inferred, a plaintiff must always prove "outwardly aggravated, outrageous, malicious, or fraudulent conduct." *Linthicum,* 150 Ariz. at 331, 723 P.2d at 680.

¶ 12 Here, the plaintiffs argue that Mr. Stuart "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others," *Gurule v. Ill. Mut. Life & Cas. Co.,* 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987) (quoting *Rawlings,* 151 Ariz. at 162, 726 P.2d at 578), namely, that Mr. Stuart allegedly left the scene of a fatal accident, and that the evil mind element may properly be inferred. In support of their position, the plaintiffs argued during the mo-

tion for judgment as a matter of law that the evidence established the requisite intent:

We can prove circumstantially an evil mind. . . .

He killed the man. He ran. Why did he run? What were his motives? What shows the evil mind here?

He was worried about his job. He knew he had a suspended license. He knew he was a black man in South Phoenix. If he got stopped, he was going to get arrested. He might lose his job. He had a tremendous motive to try to get away with it, and he thought he did, down the street not a half a block, not one block, but two blocks, gets into the lot.

A police officer follows him in. He does a circle. He's ordered to stop. He still gets out of his van, gets in the car to get a day planner, whatever it was, then attempts to get in the van and flee, until the officer has to restrain him.

This is clearly a situation where Mr. Stuart acted to serve his own interests in total disregard of Mr. Sinaloa, *who was dead in the roadway.* But he had an obligation to stop, to render assistance. He did not do that. He fled. And that's what subjects Mr. Stuart to punitive damages in this case. I think the evidence is overwhelming.

(Emphasis added.) Viewing the evidence in the light most favorable to the plaintiffs, and assuming that the plaintiffs' arguments have merit, we conclude that the evidence does not establish a *prima facie* entitlement to punitive damages.

¶ 13 Assuming Mr. Stuart did know that he hit Mr. Sinaloa rather than a bag of cans in the street, and further assuming that he intentionally fled the scene without rendering assistance, we find that this alleged aggravated course of conduct was not shown to have caused harm to Mr. Sinaloa. The requisite intent and outrageous and egregious conduct must occur in tandem with the conduct giving rise to the injury in order to recover punitive damages. *See Rawlings,* 151 Ariz. at 162, 726 P.2d at 578 (recognizing that punitive damages are allowed only when the defendant's tortious conduct is coupled with the requisite intent). The plaintiffs'

punitive damages claim fails for want of proximate cause.

¶ 14 To recover in a negligence action, a plaintiff must prove each element of negligence—the existence of a duty, breach of that duty, causation, and damages. *Taeger v. Catholic Family & Cmty. Servs.*, 196 Ariz. 285, 294, ¶ 29, 995 P.2d 721, 730 (App. 1999). Here, assuming Mr. Stuart was aware that he had run over Mr. Sinaloa, there is no question that the law imposed a duty to stop and render assistance, A.R.S. §§ 28–661 and 28–663 (1998), and that intentionally leaving the scene of the accident would result in Mr. Stuart's breach of that duty. Although these facts may well prove the conclusion that Mr. Stuart committed a crime, they do not necessarily prove a punitive damages claim. The plaintiffs must also prove that as a result of Mr. Stuart's having left the scene of the accident, Mr. Sinaloa suffered further injury. That is, in light of the evidence that Mr. Sinaloa died on impact or almost immediately after impact, the inquiry is whether Mr. Stuart's failure to stop at the scene caused Mr. Sinaloa further injury. The focus of our analysis is on the element of causation.

¶ 15 "To establish fault, a plaintiff must prove that the defendant's negligence proximately caused the plaintiff's injury." *Stephens v. Bashas' Inc.*, 186 Ariz. 427, 431, 924 P.2d 117, 121 (App.1996). The proximate cause of an injury is defined in Arizona as "that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). Mr. Stuart's failure to remain at the scene was not a contributing factor or the proximate cause of Mr. Sinaloa's death. Mr. Sinaloa died on impact or within seconds thereafter. What Mr. Stuart did or did not do following the van's impact with Mr. Sinaloa was not a contributing factor to his demise. Mr. Sinaloa would have suffered no less harm if Mr. Stuart had stopped, as required by A.R.S. sections 28–661 and 28–663.

¶ 16 Plaintiffs' counsel's concession during argument on the motion for judgment as a matter of law and the evidence presented in the plaintiffs' case-in-chief strongly support our analysis. Plaintiffs' counsel acknowledged that Mr. Sinaloa "was dead in the roadway," and the evidence established that Mr. Sinaloa died either upon impact or within an extremely short time after the accident. Mr. Stuart's failure to remain at the scene of the accident was not, as a matter of law, a proximate cause of Mr. Sinaloa's death, nor did this failure contribute in any degree to his injury.

¶ 17 The plaintiffs contend that the argument "that [Mr.] Sinaloa was dead upon impact and thus the duty to stop is somehow absolved," is specious. We agree that a motorist has a duty to stop and render aid to the victim of a motor vehicle accident, regardless of whether the victim is dead, injured, or uninjured. That is not Mr. Stuart's argument, however.

¶ 18 Mr. Stuart argues that his conduct following the harm he inflicted cannot give rise to punitive damages because Mr. Sinaloa was already dead. We agree. Regardless of whether Mr. Stuart knew that Mr. Sinaloa was dead, Mr. Stuart could inflict no more harm upon Mr. Sinaloa by fleeing the scene, nor could he have obviated any substantial risk of harm had he remained at the scene. No further harm or risk of substantial harm could have flowed from his failing to stop and render assistance. *See Taylor v. Dyer,* 190 A.D.2d 902, 593 N.Y.S.2d 122, 124 (1993) (reversing the trial court's order permitting the plaintiffs to amend their complaint to seek punitive damages and stating that "[w]hile defendant's flight from the scene might be considered reprehensible, such conduct occurring after the accident did not proximately cause plaintiffs' injuries"); *Freeman v. Anderson,* 279 Ark. 282, 651 S.W.2d 450, 452 (1983) ("In order to support an award of punitive damages, the evidence must indicate the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice might be inferred. . . . We hold, under the facts of this case, that the court correctly refused to admit evidence that the appellee left the scene of the accident as a basis for an

award of punitive damages."); *Cont'l S. Lines, Inc. v. Lum,* 254 Miss. 655, 182 So.2d 228, 232–33 (1966) (" 'In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the right of others, so as to take the case out of the ordinary rule.' The fact that the bus driver drove away from the scene of the accident, under the evidence here presented, does not require an instruction on punitive damages." (citations omitted) (quoting *Fowler Butane Gas Co. v. Varner,* 244 Miss. 130, 141 So.2d 226, 233 (1962))).

■■■ ¶ 19 Our result may have been different if, for example, Mr. Sinaloa had been injured and Mr. Stuart had intentionally fled the scene, leaving Mr. Sinaloa to bleed to death in the roadway. In that case, the link between Mr. Stuart's alleged flight and the ultimate harm caused could have supplied the necessary element of proximate cause. *See Forquer v. Pinal County,* 22 Ariz.App. 266, 269, 526 P.2d 1064, 1067 (1974) ("It follows that acts of the wrongdoer occurring after the liability[-]creating event are normally not material on the issue of punitive damages unless such acts constitute evidence as to either the manner in which the liability-creating event occurred or to the aggravation of the victim's injuries."); *see also Fisher ex rel. Fisher v. Trapp,* 748 P.2d 204, 206–07 (Utah Ct.App.1988) (recognizing that the negligent driver's flight from the scene of the accident did not, under the particular facts and circumstances, aggravate the plaintiff's injuries and, therefore, the plaintiff was not entitled to offer evidence of the driver's flight); *Brooks v. E.J. Willig Truck Transp. Co.,* 40 Cal.2d 669, 255 P.2d 802, 809 (1953) (concluding that the trial court did not abuse its discretion by admitting evidence of the defendant's flight where the plaintiff's injuries were aggravated because of the defendant's flight); *Hallman v. Cushman,* 196 S.C. 402, 13 S.E.2d 498, 500–02 (1941) (holding that the trial court did not err by instructing the jury that it could consider the defendant's flight in assessing punitive damages where the plaintiff's testimony indicated that his injuries were aggravated by the flight). The over-arching principle that we recognize to-

day, which several other jurisdictions have already recognized, is that the conduct giving rise to punitive damages must be a proximate cause of the harm inflicted.

¶ 20 Indeed, a survey of other states' jurisprudence indicates that punitive damages are proper when the conduct giving rise to punitive damages contributes to, or is a cause of, the injury. Those states include Arkansas, *see Carroll Elec. Coop. Corp. v. Carlton,* 319 Ark. 555, 892 S.W.2d 496, 501 (1995) ("An award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury . . . ."); Colorado, *see Bennett v. Greeley Gas Co.,* 969 P.2d 754, 761 (Colo.Ct.App.1998) ("The purpose of the jury's award of punitive damages is to punish the wrongdoer for willful and wanton conduct. However, the conduct referred to is that causing the injuries. . . . As a result, acts of the wrongdoer occurring after the event creating liability ordinarily are not material to the jury's award of exemplary damages." (citations omitted)); Florida, *see Ellis v. Golconda Corp.,* 352 So.2d 1221, 1225 (Fla.Dist.Ct.App. 1977) ("Exemplary or punitive damages are assessable dependent upon circumstances showing moral turpitude or atrocity in causing an injury . . . ."); Georgia, *see Moore v. Thompson,* 255 Ga. 236, 336 S.E.2d 749, 751 (1985) (per curiam) ("Evidence that the defendant's driving under the influence of alcohol caused the plaintiff's injuries is evidence of wilful misconduct . . . . Therefore, driving under the influence of alcohol so as to cause personal injuries to another is an aggravating circumstance in the act which would authorize the jury to give punitive damages . . . ."); Idaho, *see Garnett v. Transamerica Ins. Servs.,* 118 Idaho 769, 800 P.2d 656, 667–68 (1990) ("The justification for punitive damages must be that the defendant *acted* with an extremely harmful state of mind . . . ." (emphasis added) (quoting *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 665 P.2d 661, 669 (1983))); Illinois, *see Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 359 (1978) ("[P]unitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression . . . ."), *and*

*Canel & Hale, Ltd. v. Tobin,* 304 Ill.App.3d 906, 238 Ill.Dec. 64, 710 N.E.2d 861, 873 (1999) ("Courts allow punitive damages only when aggravated circumstances ... accompany a wrongful act.... Punitive damages should not be awarded if the defendant's misconduct is not above and beyond the conduct needed for the basis of the underlying cause of action." (citations omitted)); Kentucky, *see Fowler v. Mantooth,* 683 S.W.2d 250, 253 (Ky.1984) ("Section 908 of the *Restatement* sets out the elements to be 'properly' considered by 'the trier of fact' in assessing punitive damages as including '*the character of the defendant's act,* [as well as] the nature and [the] extent of the harm to the plaintiff that the defendant caused or intended to cause.' " (first alteration in original) (quoting Restatement (Second) of Torts § 908 (1977))); Louisiana, *see Billiot v. B.P. Oil Co.,* 645 So.2d 604, 613 (La.1994) (recognizing that under one of Louisiana's former punitive damages statutes, a plaintiff was required to prove, among other things, "that his or her injury was caused by the defendant's wanton or reckless conduct"); Mississippi, *see Lum,* 182 So.2d at 232; New Jersey, *see Ripa v. Owens–Corning Fiberglas Corp.,* 282 N.J.Super. 373, 660 A.2d 521, 532 (App.Div.1995) ("Where punitive damages are concerned, the nature of defendant's conduct and the probability that defendant's conduct caused the injuries are prime considerations."); New York, *see Taylor,* 593 N.Y.S.2d at 124 ("While defendant's flight from the scene might be considered reprehensible, such conduct ... did not proximately cause plaintiffs' injuries ...."); New Mexico, *see Constr. Contracting & Mgmt., Inc. v. McConnell,* 112 N.M. 371, 815 P.2d 1161, 1165 (1991) ("Absent a showing of malicious, fraudulent, or oppressive conduct, or conduct committed recklessly with a wanton disregard of the wronged party's rights, punitive damages are generally not awarded in breach of contract cases.... [U]nless there is an intention to inflict harm on the nonbreaching party or conduct which violates community standards of decency, [an intentional breach] will not serve as a basis for punitive damages."); North Carolina, *see Estate of Smith ex rel. Smith v. Underwood,* 127 N.C.App. 1, 487 S.E.2d 807, 818 (1997) ("[P]unitive dam-

ages are allowed where ... an element of aggravation, such as fraud, causes the injury."); Ohio, *see Rubeck v. Huffman,* 54 Ohio St.2d 20, 374 N.E.2d 411, 413 (1978) (per curiam) ("It is established law in this state that one may obtain punitive damages for personal injury or property loss caused by intentional, reckless, wanton, wilful and gross acts ...."(internal quotation marks omitted)); Oklahoma, *see Newport v. USAA,* 11 P.3d 190, 204, ¶ 50 (Okla.2000) ("The act which constitutes the cause of action must be activated by or accompanied with some evil intent ...." (quoting *Slocum v. Phillips Petroleum Co.,* 678 P.2d 716, 719 (Okla.1983))); Oregon, *see McElwain v. Georgia–Pacific Corp.,* 245 Or. 247, 421 P.2d 957, 958 (1966) (recognizing that Oregon courts will sanction "the recovery of punitive damages whenever there [is] evidence of a wrongful act done intentionally, with knowledge that it would cause harm"); South Carolina, *see Reed v. Clark,* 277 S.C. 310, 286 S.E.2d 384, 388 (1982) ("It is well-settled that causative violation of an applicable statute constitutes actionable negligence and is evidence of recklessness, willfulness and wantoness [sic]."); Texas, *see Seminole Pipeline Co. v. Broad Leaf Partners, Inc.,* 979 S.W.2d 730, 741 (Tex.Ct.App.1998) ("[A] punitive damage award requires proof that the damage or harm resulted from fraud, *malice,* or *gross negligence.*"); and Wisconsin, *see Kehl v. Econ. Fire & Cas. Co.,* 147 Wis.2d 531, 433 N.W.2d 279, 280 (App.1988) ("Can punitive damages be awarded for conduct that, though related to the transaction underlying a plaintiff's recovery for actual damages, did not cause or contribute to the plaintiff's loss[?] Logic and analogous precedent persuade us that the answer must be 'no.' ").

¶ 21 Our decision today does not sanction Mr. Stuart's actions if he did, indeed, intentionally flee the scene of the accident. Rather, our decision merely recognizes the legal principles that apply in evaluating punitive damages claims. The conduct giving rise to punitive damages in negligence actions must follow the same general principles of establishing liability for simple negligence. This is precisely why our common law mandates that a

**186**

plaintiff suffer actual damages as a result of the underlying tort before a claim of punitive damages can be entertained. *See, e.g., Wyatt v. Wehmueller,* 167 Ariz. 281, 285, 806 P.2d 870, 874 (1991); *Hall v. Motorists Ins. Corp.,* 109 Ariz. 334, 337, 509 P.2d 604, 607 (1973); *Hyatt Regency,* 184 Ariz. at 131, 907 P.2d at 517; *Lisa v. Strom,* 183 Ariz. 415, 420, 904 P.2d 1239, 1244 (App.1995).

■ ¶ 22 Here, the evidence, at best, demonstrates that Mr. Stuart was negligent and that his actions may have been criminal, but the plaintiffs' causation element is lacking in their punitive damages claim. Where a "plaintiff's evidence does not establish a causal connection, leaving causation to the jury's speculation, or where reasonable persons could not differ on the inference derived from the evidence ... the court [may] properly enter a directed verdict." *Robertson,* 163 Ariz. at 546, 789 P.2d at 1047. The defendants' motion for judgment as a matter of law should have been granted.

### CONCLUSION

¶ 23 For the foregoing reasons, we affirm the trial court's entry of judgment as to compensatory damages, vacate the trial court's order granting a retrial on punitive damages, and remand this matter with directions to the trial court to enter judgment in favor of the defendants on the punitive damages claim.

CONCURRING: NOEL FIDEL, Presiding Judge, and PHILIP HALL, Judge.